IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYRONE WHICHARD and<br>VICKI DUNBAR,<br>        Plaintiffs,<br><br>v.<br><br>VALLEY FORGE CASINO RESORT and<br>VALLEY FORGE CONVENTION<br>CENTER PARTNERS, L.P.,<br>        Defendants. | CIVIL ACTION<br><br><br><br>NO.  22-3597 |

**MEMORANDUM**

**HODGE, J.**                                                                                                    **April 18, 2024**

Before the Court is Defendants Valley Forge Casino Resort and Valley Forge Convention Center Partners, L.P.'s (collectively, "Defendants") Motion for Summary Judgment and Memorandum and Exhibits in support thereof (together, the "Motion"). (ECF No. 24.) Plaintiffs Tyrone Whichard and Vicki Dunbar (collectively, "Plaintiffs") oppose the Motion. (ECF No. 27.) For the reasons that follow, the Court denies the Motion.

**I.      BACKGROUND[1]**

At the outset, the Court observes that Defendants have failed to file a statement of undisputed material facts. While the Court discusses the consequences of these deficiencies in further detail below, at the moment it is necessary to note that the facts are drawn from the parties' respective statements of facts to the extent they are material, undisputed, and supported by citations to the record.[2] However, because the statement of facts provided by Defendants is sparse and

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.
[2] The Court generally cites to these statements rather than the underlying record. The Court does not recite factual assertions that are not undisputed, not material, and not supported by citations to the record, or that are supported by citations to the record the substance if which does not actually provide support. *See* Fed. R. Civ. P. 56(c)(1); Hodge, J., Policies and Procedures §(III)(E).

includes disputed facts lacking sufficient support from the record, the material facts recited here are drawn—as they must be—primarily from Plaintiffs' statement of facts.

Plaintiff Tyrone Whichard has no eyesight, and he has been blind since he was nineteen years old. (ECF No. 27 at 9.) Plaintiff Vicki Dunbar is "totally blind" and has been blind since she was twenty-eight years old. (*Id.*) Defendants do not dispute that Plaintiffs are both legally blind. (ECF No. 24 at 3 ¶4.) On July 28, 2021 around 7:00 p.m., Plaintiffs checked into Valley Forge Casino Resort for a three day, two night stay. (ECF No. 27 at 10.) Mr. Whichard was offered a complimentary ("comp") stay at the Valley Forge Casino Resort because of his previous visits there. (ECF No. 27 at 10.) Mr. Whichard explained that he was blind when he made the reservation. (*Id.*) At check-in, Mr. Whichard also informed a hotel employee that he and Ms. Dunbar are blind and disabled. (*Id.*) Plaintiffs requested sight assistance when they checked in, and they also requested assistance with getting their bags transferred to their room, which they received. (*Id.*) After Plaintiffs arrived in their room they stayed there for the rest of the evening. (*Id.*)

The next morning, July 29, 2021, Mr. Whichard called the hotel front desk to request assistance getting downstairs to get food. (ECF No. 27 at 10.) He was told that somebody would be sent up to help but it may take some time. (*Id.*) An hour passed and no one came to assist Plaintiffs. (*Id.* at 11.) Mr. Whichard called the hotel front desk a second time and was informed that no one would be coming up to help them. (*Id.*) Plaintiffs ultimately made their way to the front desk with the assistance of another hotel guest or employee who happened to be passing by their hotel room.[3] (*Id.*) Once Plaintiffs made it to the front desk, Mr. Whichard explained that Plaintiffs needed assistance getting to the lobby to get food because they are blind and disabled. (ECF No.

---

[3] Ms. Dunbar thought that a member of the hotel's cleaning staff assisted them, whereas Mr. Whichard thought another hotel guest assisted them.

27 at 12.) After some discussion, Jim Morace, the hotel's security manager, helped Plaintiffs get to the food court. (*Id.*) Plaintiffs allege that Mr. Morace told them that they "were a liability" and complained that he did not have time to be helping them. (*Id.* at 12–13.) Plaintiffs allege that while Mr. Morace was guiding them back to the elevator, Ms. Dunbar held on to his arm or shoulder. (*Id.* at 13.) Plaintiffs allege that, at some point, Mr. Morace let go of Ms. Dunbar and let her walk into a wall. (*Id.*) Ms. Dunbar hit the right side of her face and had to remove her prosthetic eye due to pain and swelling when Plaintiffs returned to their room. (*Id.*) While Mr. Morace helped Plaintiffs back to their room, Plaintiffs allege that Mr. Morace and another hotel employee began laughing when Ms. Dunbar walked into the wall. (*Id.*) Plaintiffs did not leave their hotel room that night, as they alleged they "clearly understood [the hotel employees] weren't going to help [them]." (*Id.* (citing Whichard Dep. at 37).)

The following morning, July 30, 2021, Mr. Whichard called the front desk and asked if someone could help Plaintiffs get to their scheduled bus in order to return home. (ECF No. 27 at 14.) Plaintiffs allege that their request for assistance was denied, and they again had to rely upon another hotel guest or employee who happened to be walking past their room to get to the hotel lobby.[4] (*Id.*) Once they reached the lobby, Plaintiffs asked for assistance returning their keys to the front desk, which they received from a hotel employee or guest.[5] (*Id.*) At the door, a hotel employee gave Plaintiffs a seat to sit on until the bus arrived. (*Id.*) Both Mr. Whichard and Ms. Dunbar allege feeling belittled by the treatment they experienced. (*Id.*)

---

[4] Ms. Dunbar again thought that a member of the hotel's cleaning staff assisted them, whereas Mr. Whichard thought another hotel guest assisted them.
[5] Mr. Whichard recalled giving the key to a hotel employee, and Ms. Dunbar recalled giving it to another guest.

Mr. Whichard alleges that he saw his primary care physician three or four times related to his stay at the hotel. (ECF No. 27 at 17.) He alleges that he was prescribed medication for anxiety and depression following his stay at the hotel. (*Id.* at 17, 27.) Mr. Whichard also states that he spoke with a counselor multiple times over the phone. (*Id.* at 18.) Ms. Dunbar visited a glaucoma specialist in connection with injuries she sustained from walking into the wall at the hotel. (*Id.* at 18.) Ms. Dunbar also alleges that she received a prescription for Xanax because she was having trouble sleeping at night. (*Id.*)

## II.   LEGAL STANDARD

Summary judgment can only be awarded when "there is no genuine issue as to any material fact and the movant is entitled to judgment as matter of law." Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d. Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *See Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue

for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the Court's role is not to weigh the evidence and determine the truth of the matter but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jimenez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the Court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the Court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

#### A. The Consequences of the Deficiencies in Defendants' Summary Judgment Filings

As the Court noted at the outset of this Opinion, Defendants have not filed a statement of undisputed material facts. Although Defendants' Motion contains a numbered list styled as a "statement of facts," this is not a substitute for a statement of undisputed facts, and notably what has been provided lacks sufficient support from the factual record.

The deficiencies in Defendants' summary judgment filing directly contravenes the directives of Federal Rule of Civil Procedure 56 and this Court's Policies and Procedures. Therefore, in the absence of "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," the Court must limit its consideration of material facts to the parties' respective statements of facts to the extent they are material, undisputed, and supported by citations to the record. The Court deems those facts uncontested where they are supported by citations to admissible record evidence.

### B. Plaintiffs' Title III Claim

Defendants have not met their burden of demonstrating that Plaintiffs failed to establish one or more essential elements of their case as to their Title III claim. For this reason, the Court will deny Defendants' Motion as to Plaintiffs' Title III claim.

In 1990, Congress enacted the ADA "to remedy widespread discrimination against disabled individuals. In studying the need for such legislation, Congress found that 'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.'" *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674–75 (2001). Title III of the ADA and its implementing regulations prohibit "public accommodations," including (i) hotels or other places of lodging; (ii) restaurants, bars, or other establishments serving food or drink; and (iii) place(s) of exhibition or entertainment from discriminating against people with disabilities. 42 U.S.C. § 12181(7)(A)–(C). Specifically, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, or accommodations of any place of public accommodation." 41 U.S.C. § 12182(a).

Discrimination under the ADA includes failure to afford an individual or class of individuals the equal opportunity to participate in or benefit from a good, service, or facility as able-bodied individuals on the basis of disability. 42 U.S.C. § 12182(b)(1)(A)(ii); *see generally* 42 U.S.C. § 12101. An entity can also be held liable for ADA discrimination for failing to reasonably modify its policies and practices to accommodate individuals with disabilities absent proof "that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii). In addition, a "public

accommodation may not impose a surcharge on [disabled persons] to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures, that are required to provide [those individuals] with the nondiscriminatory treatment required by the Act or this part." 28 C.F.R. § 36.301(c).

The above statutory requirements and definitions have been condensed by the case law into a three part test: "[t]o state a claim of disability discrimination under Title III of the ADA, a plaintiff must show (1) discrimination on the basis of a disability; (2) in the full and equal enjoyment of goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor, or operator." *See, e.g.*, *Harty v Burlington Coat Factory of Pennsylvania, L.L.C.*, No. 11-01923, 2011 WL 2415169, at *9 (E.D. Pa. June 16, 2011) (internal citations omitted). The first and third elements of this test are not in dispute. Defendants' challenge to Plaintiffs' case focuses on the second element: the right to full and equal enjoyment of goods and services.

Defendants' challenge to Plaintiffs' Title III claim fails. Defendants claim that Plaintiffs cannot establish that they were denied full and equal enjoyment of the goods, services, and facilities of Defendants' casino. (*See, e.g.*, ECF No. 24-6 at 2.) As an initial matter, Defendants do not cite a single authority in support of their argument aside from the authority setting forth the elements a Title III claim. (*Id.* at 2–3.) Moreover, Defendants do not address Plaintiffs' allegations with specificity but instead present a bare-bones, cherry-picked recitation of facts in support of their argument, claiming that Plaintiffs "were provided assistance on each and every occasion when they requested access to Defendants' Casino and the food service facilities operated by the Casino." (*Id.* at 3.) Defendants' recitations of facts as to Plaintiffs' Title III claim is contrary to

7

Plaintiffs' assertion that Defendants denied them the assistance they requested on multiple occasions. (ECF No. 27 at 22.) Defendants' Motion is therefore denied as to Plaintiffs' Title III claim because a jury could conclude that Plaintiffs were denied assistance and subjected to discrimination by Defendants.

### C. Defendants' Challenge to Plaintiffs' Standing

Defendants contend in their Motion that Plaintiffs' lack standing to pursue their Title III claim because they are not entitled to monetary relief under Title III of the ADA. (ECF No. 24 at 6.) Defendants' Memorandum in support of the Motion is inexplicably devoid of any reference to their challenge to Plaintiffs' standing to pursue their Title III claim. (*See generally* ECF No. 24-6.) While monetary damages cannot be awarded for an ADA claim against a public accommodation, Plaintiffs are also pursuing prospective injunctive relief, (ECF No. 27 at 23–25), and therefore Defendants' standing argument fails. *See* 42 U.S.C. 12188(a)(1) ("The remedies and procedures set forth in section 2000a-3(a) ["Civil Actions for Injunctive Relief"] of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter.")

### D. Plaintiffs' Negligent Infliction of Emotional Distress Claim

Defendants assert that Plaintiffs' negligent infliction of emotional distress claim fails because Plaintiffs did not suffer a physical injury. (ECF No. 24 at 3–4.) Ms. Dunbar contends that she suffered physical injuries when she was left to walk into a wall. (ECF No. 27 at 27.) Mr. Whichard alleges that he has experienced symptoms of anxiety and depression, which Plaintiffs claim could satisfy a physical injury requirement, although Mr. Whichard does not specifically allege he experienced any physical manifestations of the anxiety and depression. (*Id.*)

Plaintiffs must prove one of four elements to recover for negligent infliction of emotional distress:

(1) that the Defendant had a contractual or fiduciary duty toward him;

(2) that Plaintiff suffered a physical impact;

(3) that Plaintiff was in a 'zone of danger' and at risk of an immediate physical injury; or

(4) that Plaintiff had a contemporaneous perception of tortious injury to a close relative.

(*Id.* at 26 (citing *Doe v. Philadelphia Community Health Alternatives Aids Task Force*, 745 A.2d 24, 27–28 (Pa. Super. Ct. 2000) (citation omitted) (collecting cases)).) Plaintiffs claim that they suffered a physical impact due to their stay at Defendants' hotel. (*Id.* at 27.) In the alternative, Plaintiffs allege that they need not have suffered a physical impact to recover because Defendants had a special duty to them as hotel guests. (*Id.*) Because a genuine issue of material fact remains as to whether Plaintiffs suffered a physical impact, Defendants' Motion fails as to this claim as well.[6]

## IV.  CONCLUSION

For the reasons discussed above, Defendants' Motion for Summary Judgment is denied. An appropriate order follows.

BY THE COURT:

/s/ Hon. Kelley B. Hodge
_____
  HODGE, KELLEY B., J.

---

[6] Because the Court finds a genuine issue of material fact remains as to whether Plaintiffs suffered a physical impact due to their stay at Defendants' hotel, the Court need not address whether Defendants had a contractual or fiduciary duty toward Plaintiffs.